STATIC CONTROL COMPONENTS, INC. v. LEXMARK INTERNATIONAL, INC.       Doc. 1 Att. 1
Case 1:06-mc-00021-SJM     Document 1-2     Filed 11/13/2006     Page 1 of 22

Case 1:05-mc-02025     Document 256-2     Filed 11/09/2006     Page 1 of 22

**Issued by the**

# United States District Court

**WESTERN DISTRICT OF PENNSYLVANIA**

MC-06-21 E

## SUBPOENA IN A CIVIL CASE

Static Control Components, Inc.
    Plaintiff/Counterclaim Defendant

v.

Lexmark International, Inc.
    Defendant/Counterclaim Plaintiff

v.

Wazana Brothers International, Inc.
d/b/a Micro Solutions Enterprises
    Counterclaim Defendant

v.

Pendl Companies, Inc.
    Counterclaim Defendant

v.

NER Data Products, Inc.
    Counterclaim Defendant

Civil Action No. 04-CV-84-KSF
Pending in the United States District Court,
Eastern District of Kentucky
Honorable Karl S. Forester

To:  **ERS Imaging Supplies, Inc. d/b/a
    Environmental Reclamation Services**
    380 East Bayfront Parkway
    Erie, Pennsylvania 16507

    Registered Office Address & CEO:
    Terry Daidone
    2101 West 12th Street
    Erie, Pennsylvania 16505

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒     YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case pursuant Fed. R. Civ. P. 30(b)(6) and Fed. R. Civ. P. 45, or at a convenient place to be mutually determined. See Exhibit B for the deposition topics.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Courtyard by Marriott<br>7792 Peach Street<br>Erie, Pennsylvania 16509 | February 2, 2006 at 9:00 a.m. |

☒     YOU ARE COMMANDED to produce and permit inspection and copying of documents or things at the place, date, and time specified below, or at a convenient place to be mutually determined. See Exhibit A for the requests for documents and things.

| PLACE | DATE AND TIME |
|---|---|
| Banner & Witcoff, Ltd.<br>10 South Wacker Drive, Suite 3000<br>Chicago, Illinois 60606 | January 20, 2006 at 9:00 a.m. |

☐     YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)<br>Attorney for Defendant, | Date 12/21/05 |
|---|---|

Issuing Officer's Name, Address, and Phone Number
Jason S. Shull, Banner & Witcoff, Ltd., 10 South Wacker Drive, Suite 3000, Chicago, Illinois 60606, (312) 463-5000

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on:_____                    Signature of server:_____
            DATE

                                                        Address of server:_____

## Rule 45, Federal Rule of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(I) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(I) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT A**

## DEFINITIONS

1.      The term "Environmental Reclamation Services" means ERS Imaging Supplies, Inc. d/b/a Environmental Reclamation Services, as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which ERS Imaging Supplies, Inc. is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

2.      The term "Lexmark" means Lexmark International, Inc., any company name under which Lexmark is doing business and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, and employees of such entities.

3.      The term "MSE" means Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises, as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which MSE is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

4.      The term "Pendl" means Pendl Companies, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Pendl is or was doing business, its predecessors, parents, sisters, subsidiaries,

divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

5.     The term "NER" means NER Data Products, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which NER is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

6.     The term "Clarity" means Clarity Imaging Technologies, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Clarity is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

7.     The term "ISV" means David Abraham, d/b/a/ Inter Solutions Ventures, Ltd., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which ISV is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

8.     The term "Canon" means Canon U.S.A., Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which

Canon is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

9.      The term "Epson" means Epson America, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Epson is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

10.      The term "Hewlett-Packard" means Hewlett-Packard Company, as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Hewlett-Packard is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

11.      The term "Xerox" means Xerox Corporation, as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Xerox is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

Case 1:05-mc-02025    Document 256-2    Filed 11/09/2006    Page 7 of 22

12.    The terms "Lexmark Cartridge" or "Lexmark Cartridges" mean any cartridge manufactured, distributed, or sold by Lexmark International, Inc., including, but not limited to, cartridges designated by model numbers T420; T520; T522; T620; T622; T630; T632; T634; E220; E320; E321; E322; and E323, as well as the Optra, S, Se, and T-series cartridges.

13.    The terms "Lexmark Printer" or "Lexmark Printers" mean any printer manufactured, distributed, or sold by Lexmark International, Inc., including, but not limited to, printers designated by, or using Lexmark Cartridges designated by, model numbers T420; T520; T522; T620; T622; T630; T632; T634; E220; E320; E321; E322; and E323, as well as the Optra, S, Se, and T-series printers.

14.    The term "Lexmark Patents" means U.S. Patent Nos. D399,249; 5,634,169; 5,707,743; 5,758,231; 5,758,233; 5,768,661; 5,802,432; 5,804,114; 5,874,172; 5,875,378; 5,995,772; 6,009,285; 6,009,291; 6,117,557; 6,160,073; 6,300,025; 6,397,015; 6,492,083; 6,459,876; and 6,487,383.

15.    The term "Prebate" means and refers to Lexmark's Prebate program for the sale of certain Lexmark toner cartridges that are sold at a special price subject to a restriction that the cartridge be used only once and returned only to Lexmark, which program was renamed the "Lexmark Return Program" on April 22, 2003.

16.    The terms "document" or "documents" mean anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, sketched, printed or

recorded by any physical, mechanical, electronic or electrical means whatsoever, including without limitation, memoranda, correspondence, electronic mail, electronic data compilations, notes, books, records, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints, maps, plats, surveys, drawings, sketches, graphs, charts, plans, laboratory or engineering reports, notebooks, worksheets, reports, lists, analyses, summaries, ledger accounts, audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registration, solicitations, minutes, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agenda, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, instrument assignments, applications, offers, acceptances, proposals, financing statements, documents of title, appraisals, purchase orders, invoices, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, x-rays, video or audio tapes and recordings.

17.     The terms "thing" or "things" mean any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure

18.     The term "electronic data compilations" means information stored in computer memory, magnetic tapes, discs or any other computer data storage area from which such information can be read and be translated to usable form with the use of detection devices.

19.     The terms "entity" or "entities" mean natural persons, all governmental entities, agencies, officers, departments, or affiliates of the United States of America, or any other governmental entity and any corporation, foundation, partnership, proprietorship, association, organization, or group of natural persons.

20.    The terms "communication" or "communications" mean any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, Internet conferences, teleconferences, letters, e-mails, facsimiles, telegraph communications, and telex communications.

21.    The terms "purchase" or "purchased" mean rendering payment in any form, including, but not limited to, cash, any type of check, credit, merchandise credit, or electronic funds transfer.

22.    The terms "acquisition" or "acquired" mean obtaining by any means whatsoever, including obtaining without rendering any form of payment.

23.    The terms "sale" or "sold" mean receiving payment in any form, including, but not limited to, cash, any type of check, credit, merchandise credit, or electronic funds transfer.

24.    The terms "distribution" or "distributed" mean supplying by any means whatsoever, including supplying without receiving any form of payment.

25.    The term "referring or relating to" means alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

26.    "And," "or" as well as "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

27.    The use of the singular form of any word shall include the plural, and the use of the plural form of any word shall include the singular.

28.    The term "any" shall be read to mean each and every.

## INSTRUCTIONS

1.     In producing documents and things and things responsive to these requests, Environmental Reclamation Services shall furnish all documents and things within its possession, custody, or control, regardless of whether these documents and things are possessed directly by Environmental Reclamation Services or by its present or past agents, employees, companies, licensees, representatives, investigators, or attorneys.

2.     If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

    (a)     the specific ground(s) for not producing the document or thing in full;

    (b)     the bases for such a claim of privilege or immunity; and

    (c)     fully identify the information or material contained within the document or thing for which such privilege or immunity is asserted, including as applicable, the name of any document or thing, the name, address and title or its author, each addressee, and each person to whom a copy of the document or thing has been sent or received.

3.     If Environmental Reclamation Services maintains that any document or thing requested by Lexmark has been destroyed, set forth the contents of the document or thing, the date of its destruction, and the name of the person who authorized its destruction.

4.     Where an objection is made to a request, state all grounds upon which your objection is based.

5.     If, after exercising due diligence, Environmental Reclamation Services is unable to determine the existence of any documents or things falling within a specific request, Environmental Reclamation Services shall so state in its written response.

6.     With respect to each of the following requests, Environmental Reclamation Services shall identify and/or produce all documents which are known to Environmental Reclamation Services or which can be located or discovered by Environmental Reclamation Services through diligent effort on the part of Environmental Reclamation Services, its employees, representatives, attorneys or accountants, including, but not limited to, all documents which are in the business or personnel files of Environmental Reclamation Services' employees or contained or stored within a computer in the possession of its representatives, attorneys, or accountants, or accessible to Environmental Reclamation Services, its employees, or its representatives, attorneys or accountants.

7.     Whenever used herein, the singular shall be deemed to include the plural and the plural shall be deemed to include the singular and the disjunctive shall be deemed to include the conjunctive and vice versa so as to elicit all information potentially responsive to the interrogatory and all of its context.

8.     The requests are to be regarded as continuing, and Environmental Reclamation Services is requested to provide, by way of supplementary responses, any additional information, most notably that specified under Rule 26(e) of the Federal Rules of Civil Procedure, that may hereinafter be obtained by Environmental Reclamation Services or any person acting on Environmental Reclamation Services' behalf, which will augment or otherwise modify Environmental Reclamation Services' responses.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request No. 1:**    Please produce all documents and things referring or relating to the purchase or other acquisition of used Lexmark Cartridges, including, but not limited to:

    a.  Documents and things sufficient to identify the entities (including names, addresses, phone numbers, and/or email addresses) that Environmental Reclamation Services purchased or acquired used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges from;

    b.  Documents and things sufficient to identify the entities that Environmental Reclamation Services plans to purchase or acquire used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges from in the future;

    c.  Documents and things containing Environmental Reclamation Services' communications with any entities identified in response to Request No. 1(a) and 1(b) including, but not limited to, advertising materials, marketing materials, call records, and/or electronic mail;

    d.  Documents and things sufficient to identify the number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services purchased or acquired from any entities identified in response to Request No. 1(a);

    e.  Documents and things sufficient to identify the estimated number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services plans to purchase or acquire in the future from any entities identified in response to Request No. 1(b);

    f.  Documents and things sufficient to identify the types or model numbers of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental

Reclamation Services purchased or acquired from any entities identified in response to Request No. 1(a);

g.      Documents and things sufficient to identify the prices paid by Environmental Reclamation Services for each of the types or model numbers of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services purchased or acquired from any entities identified in response to Request No. 1(a); and

h.      Documents and things describing Environmental Reclamation Services' strategy for purchasing or acquiring used Prebate Lexmark Cartridges and used non-Prebate Lexmark cartridges.

**Request No. 2:**    Please produce all documents and things referring or relating to the sale or other distribution of used Lexmark Cartridges, including, but not limited to:

a.      Documents and things sufficient to identify the entities (including names, addresses, phone numbers, and/or email addresses) that Environmental Reclamation Services sold or distributed used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges to;

b.      Documents and things sufficient to identify the entities that Environmental Reclamation Services plans to sell or distribute used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges to in the future;

c.      Documents and things containing Environmental Reclamation Services' communications with any entities identified in response to Request No. 2(a) and 2(b) including, but not limited to, advertising materials, marketing materials, call records, and/or electronic mail;

d.     Documents and things sufficient to identify the number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services sold or distributed to any entities identified in response to Request No. 2(a);

e.     Documents and things sufficient to identify the estimated number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services plans to sell or distribute in the future to any entities identified in response to Request No. 2(b);

f.     Documents and things sufficient to identify the types or model numbers of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services sold or distributed to any entities identified in response to Request No. 2(a);

g.     Documents and things sufficient to identify the prices charged upon resale by Environmental Reclamation Services for each of the types or model numbers of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services sold or distributed to any entities identified in response to Request No. 2(a); and

h.     Documents and things describing Environmental Reclamation Services' strategy for selling or distributing used Prebate Lexmark Cartridges and used non-Prebate Lexmark cartridges.

**Request No. 3:**     Please produce all documents and things referring or relating to the purchase or other acquisition of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox, including, but not limited to:

a.     Documents and things sufficient to identify the entities (including names, addresses, phone numbers, and/or email addresses) that Environmental Reclamation Services

purchased or acquired used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox from;

b.      Documents and things sufficient to identify the number of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services purchased or acquired from any entities identified in response to Request No. 3(a);

c.      Documents and things sufficient to identify the types or model numbers of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services purchased or acquired from any entities identified in response to Request No. 3(a); and

d.      Documents and things sufficient to identify the prices paid by Environmental Reclamation Services for each of the types or model numbers of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services purchased or acquired from any entities identified in response to Request No. 3(a).

**Request No. 4:**    Please produce all documents and things referring or relating to the sale or other distribution of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox, including, but not limited to:

a.      Documents and things sufficient to identify the entities (including names, addresses, phone numbers, and/or email addresses) that Environmental Reclamation Services sold or distributed used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox to;

b.    Documents and things sufficient to identify the number of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services sold or distributed to any entities identified in response to Request No. 4(a);

c.    Documents and things sufficient to identify the types or model numbers of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services sold or distributed to any entities identified in response to Request No. 4(a); and

d.    Documents and things sufficient to identify the prices paid by Environmental Reclamation Services for each of the types or model numbers of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services sold or distributed to any entities identified in response to Request No. 4(a).

**Request No. 5:**    Please produce all documents and things referring or relating to Lexmark; Lexmark's Printers; Lexmark Cartridges; Lexmark's Prebate program; and/or Lexmark Patents.

**Request No. 6:**    Please produce all documents and things constituting or referring to communications to or from Environmental Reclamation Services referring to Lexmark; Lexmark's Printers; Lexmark Cartridges; Lexmark's Prebate program; and/or Lexmark Patents.

**Request No. 7:**    Please produce all documents and things referring or relating to Lexmark's dispute with SCC, MSE, Pendl, and/or NER (Case No. 04-84-KSF, United States District Court for the Eastern District of Kentucky).

**Request No. 8:**    Please produce all documents and things referring or relating to Lexmark's dispute with Clarity Imaging Technologies, Inc. and/or David Abraham, d/b/a/ Inter Solutions Ventures, Ltd. (Case No. 04-456-KSF, United States District Court for the Eastern District of Kentucky).

**EXHIBIT B**

**PLEASE TAKE NOTICE** that beginning at 9:00 a.m. on February 2, 2006, Plaintiff, Lexmark International, Inc., will take the videotaped deposition, pursuant to Fed. R. Civ. P. 30(b)(6) and Fed. R. Civ. P. 45, of ERS Imaging Supplies, Inc. d/b/a. Environmental Reclamation Services ("Environmental Reclamation Services") on the following Deposition Topics. The deposition will be conducted at the Courtyard by Marriott, 7792 Peach Street, Erie, Pennsylvania, 16509, or at a convenient place to be mutually determined. Environmental Reclamation Services is directed to designate one or more officers, directors, managing agents, or other persons who consent to testify with respect to the following Deposition Topics. The definitions set forth in Exhibit A are incorporated herein by reference.

The deposition will be upon oral examination before a notary public, or an officer authorized to administer oaths.

**DEPOSITION TOPICS**

**Deposition Topic No. 1.**    The purchase or other acquisition of used Lexmark Cartridges, including, but not limited to:

a.    the entities that Environmental Reclamation Services purchased or acquired used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges from;

b.    the entities that Environmental Reclamation Services plans to purchase or acquire used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges from in the future;

c.    Environmental Reclamation Services' communications with any entities it purchased or acquired, or plans to purchase or acquire, used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges from;

d.    the number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services purchased or acquired;

e.    the estimated number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services plans to purchase or acquire in the future;

f.    the types or models number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services purchased or acquired;

g.    the prices paid by Environmental Reclamation Services for each of the types or model numbers of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services purchased or acquired; and

h.    Environmental Reclamation Services' strategy for purchasing or acquiring used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges.

**Deposition Topic No. 2.**    The sale or other distribution of used Lexmark Cartridges, including, but not limited to:

a.    the entities that Environmental Reclamation Services sold or distributed used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges to;

b.    the entities that Environmental Reclamation Services plans to sell or distribute used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges to in the future;

c.       Environmental Reclamation Services' communications with any entities it sold or distributed, or plans to sell or distribute, used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges to, including, but not limited to, advertising materials, marketing materials, call records, and/or electronic mail;

d.       the number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services sold or distributed;

e.       the estimated number of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services plans to sell or distribute in the future;

f.       the types or model numbers of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services sold or distributed;

g.       the prices charged upon resale by Environmental Reclamation Services for each of the types or model numbers of used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges that Environmental Reclamation Services sold or distributed; and

h.       Environmental Reclamation Services' strategy for selling or distributing used Prebate Lexmark Cartridges and used non-Prebate Lexmark Cartridges.

**Deposition Topic No. 3.**     The purchase or other acquisition of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox, including, but not limited to:

a.       the entities that Environmental Reclamation Services purchased or acquired used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox from;

b.      the number of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services purchased or acquired;

c.      the types or model numbers of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services purchased or acquired; and

d.      the prices paid by Environmental Reclamation Services for each of the types or model numbers of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services purchased or acquired.

**Deposition Topic No. 4.**     The sale or other distribution of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox, including, but not limited to:

a.      the entities that Environmental Reclamation Services sold or distributed used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox to;

b.      the number of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services sold or distributed;

c.      the types or model numbers of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services sold or distributed; and

d.      the prices paid by Environmental Reclamation Services for each of the types or model numbers of used toner cartridges compatible with laser printers made, sold, or branded by any of Canon, Epson, Hewlett-Packard, and Xerox that Environmental Reclamation Services sold or distributed.

**Deposition Topic No. 5.**      Environmental Reclamation Services' knowledge and communications regarding Lexmark's Printers.

**Deposition Topic No. 6.**      Environmental Reclamation Services' knowledge and communications regarding Prebate Lexmark Cartridges and non-Prebate Lexmark cartridges.

**Deposition Topic No. 7.**      Environmental Reclamation Services' knowledge and communications regarding Lexmark's Prebate program.

**Deposition Topic No. 8.**      Environmental Reclamation Services' knowledge and communications regarding Lexmark's Patents.

**Deposition Topic No. 9.**      Environmental Reclamation Services' knowledge and communications regarding Lexmark's dispute with Static Control Components, Inc., Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises, Pendl Companies, Inc., and/or NER Data Products, Inc. (Case No. 04-84-KSF, United States District Court for the Eastern District of Kentucky).

**Deposition Topic No. 10.**      Environmental Reclamation Services' knowledge and communications regarding Lexmark's dispute with Clarity Imaging Technologies, Inc. and/or David Abraham, d/b/a/ Inter Solutions Ventures, Ltd. (Case No. 04-456-KSF, United States District Court for the Eastern District of Kentucky).