STATIC CONTROL COMPONENTS, INC. v. LEXMARK INTERNATIONAL, INC. Doc. 1 Att. 6
Case 1:06-mc-00021-SJM   Document 1-7   Filed 11/13/2006   Page 1 of 13
Case 1:05-mc-02025   Document 256-7   Filed 11/09/2006   Page 1 of 13

SUBPOENA IN A CIVIL CASE
Issued by the
# United States District Court
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Static Control Components, Inc.<br>　　Plaintiff/Counterclaim Defendant<br><br>v.<br><br>Lexmark International, Inc.<br>　　Defendant/Counterclaim Plaintiff<br><br>v.<br><br>Wazana Brothers International, Inc.<br>d/b/a Micro Solutions Enterprises<br>　　Counterclaim Defendant<br><br>v.<br><br>Pendl Companies, Inc.<br>　　Counterclaim Defendant<br><br>v.<br><br>NER Data Products, Inc.<br>　　Counterclaim Defendant | Civil Action No. 04-CV-84-KSF<br>Pending in the United States District Court,<br>Eastern District of Kentucky<br>The Honorable Gregory Van Tatenhove |

### AFFIDAVIT OF WILLIAM EIDENMULLER

COMMONWEALTH OF PENNSYLVANIA　)
　　　　　　　　　　　　　　　　　　　) ss:
COUNTY OF ERIE　　　　　　　　　　)

　　William Eidenmuller, being duly sworn according to law, states as follows:

1. I, William Eidenmuller, am the Information Technology Director of ERS Imaging Supplies, Inc. d/b/a Environmental Reclamation Services ("ERS"), 380 East Bayfront Parkway, Erie, Pennsylvania 16507.

2. ERS is in the business of, among other things, purchasing and selling used toner cartridges.

3. I have regularly reviewed, handled and identified ERS business records. Through my experience, I have become knowledgeable about the procedures by which ERS business records are created and maintained, including the business records described below.

4. On January 20, 2006, February 8, 2006 and April 3, 2006, respectively, I provided business records in response to Lexmark International, Inc.'s subpoena of business records regarding ERS's acquisitions, purchases and sales of used toner cartridges. See Declaration of William Eidenmuller Pursuant to Federal Rule of Evidence 902(11) and Supplemental Declaration of William Eidenmuller Pursuant to Federal Rule of Evidence 902(11) attached hereto.

5. I have reviewed the Subpoena in a Civil Case served upon ERS by Counterclaim Defendant Pendl Companies, Inc., which commands the production of documents regarding the purchase or other acquisition of used Lexmark Laser Toner Cartridges by ERS from any of the 159 identified corporate entities; any communications between ERS and Lexmark regarding any of the 159 identified corporate entities; any business relationship between ERS and Lexmark, and; any contracts, agreements, understandings, proposals and counterproposals between ERS and Lexmark.

6.  The documents requested by Counterclaim Defendant Pendl Companies, Inc. were already produced pursuant to the Subpoena in a Civil Case served upon ERS by Defendant and Counterclaim Plaintiff Lexmark International, Inc.

7.  It is estimated that a response to the document requests contained in the Subpoena in a Civil Case served upon ERS by Counterclaim Defendant Pendl Companies, Inc. would require significant time and effort and would result in the production of approximately 200,000 records and the use of approximately three (3) full time work days by IT staff.

William Eidenmuller, IT Manager, ERS Imaging Supplies, Inc. d/b/a Environmental Reclamation Services, Inc.

Sworn to and subscribed before me

this 9th day of November, 2006.

_____
Notary Public

NOTARIAL SEAL
TRACEY L. SCHMITT, NOTARY PUBLIC
ERIE, ERIE COUNTY, PENNA.
MY COMMISSION EXPIRES ON NOV. 27, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CASE NO. 04-CV-84-KSF

STATIC CONTROL COMPONENTS, INC.   PLAINTIFF/COUNTERCLAIM DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.   DEFENDANT/COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.
d/b/a MICRO SOLUTIONS ENTERPRISES et al.   COUNTERCLAIM DEFENDANTS

### DECLARATION OF WILLIAM EIDENMULLER PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, William Eidenmuller, being first duly sworn upon oath and having knowledge of the facts attested to herein state that if called to testify herein I would state as follows:

1.   I am the Information Technology Director of ERS Imaging Supplies, Inc. d/b/a Environmental Reclamation Services ("ERS"), 380 East Bayfront Parkway, Erie, Pennsylvania 16507.

2.   ERS is in the business of, among other things, purchasing and selling used toner cartridges.

3. I have regularly reviewed, handled and identified ERS business records. Through my experience, I have become knowledgeable about the procedures by which ERS business records are created and maintained, including the business records described below.

4. On January 20, 2006, I provided business records in response to Lexmark International, Inc.'s subpoena of business records regarding ERS's acquisitions, purchases and sales of used toner cartridges. Specifically, I uploaded a SQL database containing all business records currently in ERS's possession regarding its purchases and sales of used toner cartridges from 2000 to 2005, and containing all business records currently in ERS's possession regarding its acquisition of used toner cartridges from 1998 to 2005 through its Funding Factory program, to the computer server operated by Lexmark International, Inc.'s outside counsel, Banner & Witcoff, LTD. In addition, on or about February 8, 2006, I copied that same SQL database containing ERS business records onto a DVD labeled "ERS/FF Transactions 2000-2005." I certify that the ERS business records uploaded to the computer server operated by Lexmark International, Inc.'s outside counsel, Banner & Witcoff, LTD, and copied onto the DVD labeled "ERS/FF Transactions 2000-2005" are true and accurate copies of the business records that were created and/or maintained by ERS.

5. I certify that the ERS business records contained in the SQL database produced on January 20, 2006, and contained on the DVD labeled "ERS/FF Transactions 2000-2005," were created and/or maintained as part of ERS's regularly conducted business practices to identify, among others things: (a) the entities from which ERS purchased or acquired used toner cartridges; (b) the number of used toner cartridges that ERS purchased or acquired; (c) the types or model numbers of used toner cartridges that ERS purchased or acquired; and, (d) the prices paid by ERS for each of the types or model numbers of used toner cartridges that ERS purchased

or acquired. I further certify that the ERS business records contained in the SQL database produced on January 20, 2006, and contained on the DVD labeled "ERS/FF Transactions 2000-2005," are comprised of true and accurate information.

6. On or about January 23, 2006, I supervised the copying of the customer purchase orders received by ERS during 2005 and currently in ERS's possession onto a CD labeled "MTB 1-23-06." I certify that the copies of the 2005 customer purchase orders contained on the CD labeled "MTB 1-23-06" are true and accurate copies of the 2005 customer purchase orders currently in ERS's possession and maintained by ERS.

7. I certify that the 2005 customer purchase orders contained on the CD labeled "MTB 1-23-06" were maintained as part of ERS's regularly conducted business practices to identify, in part, and among others things: (a) the entities to which ERS sold used toner cartridges in 2005; (b) the number of used toner cartridges that ERS sold in 2005; (c) the types or model numbers of used toner cartridges that ERS sold in 2005; and, (d) the prices paid for each of the types or model numbers of used toner cartridges that ERS sold in 2005.

I declare under penalty of law that the foregoing is true and correct. Executed on this 20 day of February, 2006.

William Eidenmuller

Sworn to and subscribed before me this
10th day of February, 2006.

Notary Public

**NOTARIAL SEAL**
TRACEY L. SCHMITT, NOTARY PUBLIC
ERIE, ERIE COUNTY, PENNA.
MY COMMISSION EXPIRES ON NOV. 27, 2008

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CASE NO. 04-CV-84-KSF

STATIC CONTROL COMPONENTS, INC.    PLAINTIFF/COUNTERCLAIM DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.    DEFENDANT/COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.
d/b/a MICRO SOLUTIONS ENTERPRISES et al.    COUNTERCLAIM DEFENDANT

**SUPPLEMENTAL DECLARATION OF WILLIAM EIDENMULLER
PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, William Eidenmuller, being first duly sworn upon oath and having knowledge of the facts attested to herein state that if called to testify herein I would state as follows

1. I am the Information Technology Director of ERS Imaging Supplies, Inc. d/b/a Environmental Reclamation Services ("ERS"), 380 East Bayfront Parkway, Erie, Pennsylvania, 16507.

2. ERS is in the business of, among other things, purchasing and selling used toner cartridges.

3. I have regularly reviewed, handled and identified ERS business records. Through my experience, I have become knowledgeable about the procedures by which ERS's business records are created and maintained, including the business records described below.

4. On January 20, 2006, I provided business records in response to Lexmark International, Inc.'s subpoena of business records regarding ERS's acquisitions, purchases and sales of used toner cartridges. Specifically, I uploaded a SQL database containing business records currently in ERS's possession regarding its purchases and sales of used toner cartridges from 2000 to 2005, and containing business records currently in ERS's possession regarding its acquisition of used toner cartridges from 1998 to 2005 through its Funding Factory program, to the computer server operated by Lexmark International, Inc.'s outside counsel, Banner & Witcoff, LTD. In addition, on or about February 8, 2006, I copied and produced that same SQL database containing ERS business records onto a DVD labeled "ERS/FF Transactions 2000-2005," which is attached hereto as Exhibit A and which was previously marked as Exhibit 31 at the February 21, 2006 deposition of Michael Joseph Welton. I certify that the ERS business records uploaded to the computer server operated by Lexmark International, Inc.'s outside counsel, Banner & Witcoff, LTD., and copied onto the DVD labeled "ERS/FF Transactions 2000-2005," are true and accurate copies of the business records that were created and/or maintained by ERS.

5. On or about February 22, 2006, I discovered that the SQL database information produced on January 20, 2006 and February 8, 2006, did not contain all of the information pertaining to ERS's acquisitions, purchases and sales of used toner cartridges. As a result, on April 3, 2006, I provided supplemental business records in response to Lexmark International, Inc.'s subpoena. Specifically, I prepared and produced a CD labeled "ERS/FF Transactions - Omitted, 2000-2005, February 23, 2006" (attached hereto as Exhibit B) that contains additional business records pertaining to ERS's acquisitions, purchases and sales of used toner cartridges. I

also prepared and produced a DVD labeled "ERS/FF Transactions, 2000-2005, February 23, 2006" (attached hereto as Exhibit C) that is comprehensive and contains: (i) all of the SQL database information produced on January 20, 2006 and February 8, 2006; and (ii) the supplemental business records contained on the CD labeled "ERS/FF Transactions - Omitted, 2000-2005, February 23, 2006." Therefore, the SQL database information contained on the DVD labeled "ERS/FF Transactions, 2000-2005, February 23, 2006," and attached hereto as Exhibit C, contains all of the business records currently in ERS's possession regarding its acquisitions, purchases and sales of used toner cartridges from 2000 to 2005.

6. I certify that the ERS business records contained on the DVD labeled "ERS/FF Transactions 2000-2005," on the CD labeled "ERS/FF Transactions - Omitted, 2000-2005, February 23, 2006," and on the DVD labeled "ERS/FF Transactions, 2000-2005, February 23, 2006" (attached hereto as Exhibits A, B and C, respectively) were created and/or maintained as part of ERS's regularly conducted business practices to identify, among other things: (a) the entities from which ERS purchased or acquired used toner cartridges; (b) the number of used toner cartridges that ERS purchased or acquired; and, (d) the prices paid by ERS for each of the types or model numbers of used toner cartridges that ERS purchased or acquired. I further certify that the ERS business records contained in the SQL database produced on January 20, 2006, February 8, 2006 and April 3, 2006, contained on the DVD labeled "ERS/FF Transactions 2000-2005," on the CD labeled "ERS/FF Transactions - Omitted, 2000-2005, February 23, 2006," and on the DVD labeled "ERS/FF Transactions, 2000-2005, February 23, 2006" (attached hereto as Exhibits A, B and C, respectively) are comprised of true and accurate information.

3

7. On or about January 23, 2006, I supervised the copying of the customer purchase orders received by ERS during 2005 and currently in ERS's possession onto a CD labeled "MTB 1-23-06," which is attached hereto as Exhibit D and which was previously marked as Exhibit 32 at the February 21, 2006 deposition of Michael Joseph Welton. I certify that the copies of the 2005 customer purchase orders contained on the CD labeled "MTB 1-23-06" are true and accurate copies of the 2005 customer purchase orders currently in ERS's possession and maintained by ERS.

8. I certify that the 2005 customer purchase orders contained on the CD labeled "MTB 1-23-06" were maintained as part of ERS's regularly conducted business practices to identify, in part, and among others things: (a) the entities to which ERS sold used toner cartridges in 2005; (b) the number of used toner cartridges that ERS sold in 2005; (c) the types or model numbers of used toner cartridges that ERS sold in 2005; and, (d) the prices paid for each of the types or model numbers of used toner cartridges that ERS sold in 2005.

9. I have performed searches of the SQL database contained on the DVD labeled "ERS/FF Transactions, 2000-2005, February 23, 2006" (attached hereto as Exhibit C) to determine: the number of Lexmark-branded laser toner cartridges that ERS purchased on an annual basis from outside the U.S.; the number of Lexmark-branded laser toner cartridges that ERS purchased on an annual basis from within the U.S.; the number of Lexmark-branded laser toner cartridges that ERS purchased on an annual basis from within the State of North Carolina prior to October 1, 2003; and, the number of Lexmark-branded laser toner cartridges that ERS purchased on an annual basis from within the State of North Carolina since October 1, 2003. I

4

have prepared a report containing the results of my searches, with supporting data, attached hereto as Exhibit E (see Charts 3a, 3b, 3c and 3d).

10. For the Lexmark-branded Optra S and Optra T cartridges, I have performed separate searches to determine: the number of Prebate cartridges purchased on an annual basis from outside the U.S.; the number of Prebate cartridges purchased on an annual basis from within the U.S.; the number of non-Prebate cartridges purchased on an annual basis from outside the U.S.; the number of non-Prebate cartridges purchased on an annual basis from within the U.S.; the number of Prebate cartridges purchased on annual basis from within the State of North Carolina prior to October 1, 2003; and, the number of Prebate cartridges purchased on an annual basis from within the State of North Carolina since October 1, 2003. I have prepared a report containing the results of my searches, with supporting data, attached hereto as Exhibit E (see Charts 1a, 1b, 1c, 1d, 1e and 1f).

11. I have performed searches of the SQL database contained on the DVD labeled "ERS/FF Transactions, 2000-2005, February 23, 2006" (attached hereto as Exhibit C) to determine: the number of Lexmark-branded laser toner cartridges that ERS sold on an annual basis; the number of Lexmark-branded laser toner cartridges that ERS sold to Pendl Companies on an annual basis; the number of Lexmark-branded laser toner cartridges that ERS sold to Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises on an annual basis; the number of Lexmark-branded laser toner cartridges that ERS sold to Static Control Components on an annual basis; and, the number of Lexmark-branded laser toner cartridges that ERS sold to NER Data Products on an annual basis. I have prepared a report containing the results of my searches, with supporting data, attached hereto as Exhibit E (see Charts 4a, 4b, 4c, 4d and 4e).

12. For the Lexmark-branded Optra S and Optra T cartridges, I have performed separate searches to determine: the number of Prebate cartridges sold on an annual basis; the number of non-Prebate cartridges sold on an annual basis; the number of Prebate cartridges sold on an annual basis to Pendl Companies; the number of non-Prebate cartridges sold on an annual basis to Pendl Companies; the number of Prebate cartridges sold on an annual basis to Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises; the number of non-Prebate cartridges sold on an annual basis to Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises; the number of Prebate cartridges sold on an annual basis to Static Control Components; the number of non-Prebate cartridges sold on an annual basis to Static Control Components; the number of Prebate cartridges sold on an annual basis to NER Data Products; and, the number of non-Prebate cartridges sold on an annual basis to NER Data Products. I have prepared a report containing the results of my searches, with supporting data, attached hereto as Exhibit E (see Charts 2a, 2b, 2c, 2d, 2e, 2f, 2g, 2h, 2i and 2j).

13. I have also performed searches of the SQL database contained on the DVD labeled "ERS/FF Transactions, 2000-2005, February 23, 2006" (attached hereto as Exhibit C) to determine: the number and average prices of Canon-branded laser toner cartridges sold by ERS; the number and average prices of Canon-branded laser toner cartridges acquired or purchased by ERS; the number and average prices of Hewlett-Packard-branded laser toner cartridges sold by ERS; the number and average prices of Hewlett-Packard-branded laser toner cartridges acquired or purchased by ERS; the number and average prices of Epson-branded laser toner cartridges sold by ERS; the number and average prices of Epson-branded laser toner cartridges acquired or purchased by ERS; the number and average prices of Xerox-branded laser toner cartridges sold

by ERS; and, the number and average prices of Xerox-branded laser toner cartridges acquired or purchased by ERS. I have prepared a report containing the results of my searches, with supporting data, attached hereto as Exhibit E (see Charts 5a, 5b, 5c and 5d).

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 3rd day of April, 2006

*William Eidenmuller*

Sworn to and subscribed before me this
3rd day of April, 2006.

*Tracey L Schmitt*
Notary Public

NOTARIAL SEAL
TRACEY L. SCHMITT, NOTARY PUBLIC
ERIE, ERIE COUNTY, PENNA.
MY COMMISSION EXPIRES ON NOV. 27, 2006